Theran Noble AYERS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 58832, 58833.

Court of Criminal Appeals of Texas.

Nov. 12, 1980.

George R. Milner, Ronald L. Goranson, Dallas, for appellant.

Henry M. Wade, Dist. Atty., W. T. Westmoreland, Jr., Douglas Mulder and John Sparling, Asst. Dist. Attys., Dallas, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING

PHILLIPS, Judge.

The prior panel opinion is withdrawn.

These are appeals from convictions for murder. Punishment in each cause is imprisonment for 45 years.

On original submission a panel of this Court found the trial court's charge on guilt/innocence to be fundamentally defective. Specifically, the panel held that the court fundamentally erred in (1) failing to require as a prerequisite to a conviction for murder a finding beyond a reasonable doubt that appellant was not acting under the immediate influence of sudden passion arising from an adequate cause, and (2) requiring as a prerequisite for a conviction for the lesser included offense of voluntary manslaughter a finding beyond a reasonable doubt that appellant was acting under the immediate influence of sudden passion. The state has filed a motion for rehearing urging that appellant is not entitled to a reversal because he himself requested the charge given by the court.

■ The record supports the state's claim. It appears that the court's charge on the offense of murder and its charge on the lesser included offense of voluntary manslaughter substantially track appellant's requested charges on those offenses. If a defendant requests a charge and that charge is submitted as requested, the defendant is in no position to benefit from any error in the charge. *Cadd v. State*, 587 S.W.2d 736 (Tex.Cr.App.1979); *Cain v. State*, 549 S.W.2d 707, 714 (Tex.Cr.App. 1977); *Stiles v. State*, 520 S.W.2d 894 (Tex. Cr.App.1975).

■ In any event, it is not clear that fundamental error was committed. As the panel noted near the end of its opinion, the court charged the jury that if it was convinced appellant was guilty either of murder or voluntary manslaughter, but was not sure of which offense he was guilty, it should resolve any doubt in appellant's favor and find him guilty of voluntary manslaughter. The jury would find itself in the dilemma foreseen by this portion of the charge only if it was convinced beyond a reasonable doubt that appellant intentionally or knowingly killed the victim, but was unsure whether appellant had done so while under the immediate influence of sudden passion arising from an adequate cause. In that event the jury was properly instructed to convict appellant of voluntary manslaughter. Although inartfully structured, the court's charge does not appear to be fundamentally defective.

We now turn to the grounds of error raised by appellant in his appellate brief.

Appellant contends that his right against self-incrimination was violated by the prosecutor's reference to his pre-trial silence. Appellant also sets forth several grounds of error dealing with the exclusion of an expert medical opinion, defective instructions to the jury, prejudicial and inflammatory tactics by the prosecutor, and the court's failure to grant a new trial based upon newly discovered evidence. The sufficiency of the evidence is not disputed.

Appellant became suspicious of his wife's relationship with a family friend, Art Hammett. On the day of the offense Hammett drove his van to a secluded area for a private lunch with appellant's wife. Appellant observed this meeting. Realizing his suspicions were correct, appellant shot and killed his wife and Hammett.

Immediately following the shooting appellant drove home and called for an ambulance. He told the ambulance dispatcher that a murder had occurred--that he shot a man and a woman. Appellant also called the police and told them he shot his wife and Art Hammett. Appellant then called his daughter and elaborated on the events that immediately preceded the offense. According to appellant's daughter, her father told her that when he approached the van Hammett attempted to start the van but failed. Appellant told his daughter "Art just sat there with his hands in his lap and said 'Hold it,' but ... I didn't hold it. I blew his head off." Shortly after appellant made these telephone calls police went to appellant's house and apprehended him.

At trial, appellant testified that he shot Art Hammett out of self-defense. He also testified that he must have blacked out because he did not remember shooting his wife. During cross-examination the prosecutor asked appellant:

> But—I mean doesn't it strike you as somewhat unusual that a man who's going to claim self-defense has waited all this time to do so?

Similarly, the prosecutor asked one of the police officers who had apprehended appellant whether appellant had offered any explanation or justification for the offenses when the officers met him at his house. Appellant's objections were sustained, and the jury was instructed to disregard. Appellant's motions for mistrial were overruled. During his jury argument the prosecutor also made references to appellant's failure to tell anyone that he blacked out or acted in self–defense. Appellant's objections were overruled.

Appellant contends that the prosecutor's questions and argument conflicted with appellant's constitutional right to remain silent.

■ The general rule is that once the defendant voluntarily takes the stand before the jury he is subject to the same rules as any other witness; he may be impeached, contradicted, made to give evidence against himself, cross–examined as to new matters, and treated in every respect as any other witness testifying in his behalf, except when there are overriding constitutional or statutory prohibitions. *Brown v. United States*, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958); *Myre v. State*, 545 S.W.2d 820 (Tex.Cr.App.1977); *Sensabaugh v. State*, 426 S.W.2d 224 (Tex. Cr.App.1968).

There are instances when constitutional considerations override the general rule. In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the prosecutor impeached the defendant's testimony at trial by revealing that the defendant had remained silent after being arrested and informed of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 602, 16 L.Ed.2d 694 (1966). The Supreme Court held that it was a violation of due process to draw unfavorable inferences from what may have been an exercise of the defendant's right to remain silent under *Miranda*.

■ However, where the defendant makes a statement upon being arrested and given his *Miranda* rights, and then at trial gives testimony that is inconsistent with the prior statement, he may be impeached with the prior statement. *Anderson v. Charles*, —— U.S. ——, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980). *Doyle* does not apply because "a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent." *Id.* at 100 S.Ct. 2182.

■ Turning to the case before us, we first note that appellant's trial testimony was inconsistent with his pre–arrest statements. Appellant's statement to his daughter that he shot Hammett when Hammett had his hands in his lap cannot be reconciled with appellant's testimony that he acted in self–defense. Moreover, appellant's failure to mention in his pre–arrest statements that he blacked out or acted in self–defense is inconsistent with his assertion of those defenses at trial. Had appellant blacked out or acted in self–defense it would have been only natural for him to say so when he made the pre–arrest statements. His failure to assert those facts amounted in effect to an assertion of the non–existence of those facts. 3A Wigmore, Evidence § 1042 (Chadbourn rev.1970). As the Court of Appeals of New York stated in the similar case *People v. Savage*, 50 N.Y.2d 673, 409 N.E.2d 858, 861 (1980):

... that the defendant decided not to offer the mitigating explanation for his conduct in amelioration of his role in the shooting he undertook to describe could challenge credulity. Having on his own ventured to communicate devastatingly incriminating information, his failure to then so much as mention the excuse he was later to put forth is well–nigh inexplicable except as a recent fabrication. Measured by the way in which almost any normal person would perceive it, the strongest considerations of self–interest would be expected to keep him from containing it within himself. In short, his conduct ran counter to human experience.... Thus, the exclusion, however it might be weighed by the triers of the facts, was, to say the least, extraordinarily probative in enabling them to evaluate the reliability of the explanation when it surfaced for the first time at trial.

The prosecutor's impeachment of appellant did not implicate *Doyle*. As in *Anderson*, supra, appellant did not maintain pre-trial silence, but instead spoke out concerning the murders of his wife and Hammett. When appellant altered his story at trial, the prosecutor properly could test appellant's credibility by pointing out the inconsistencies between appellant's testimony and his pre-trial statements. Compare *People v. Savage*, supra. *Doyle* can be further distinguished on the ground that appellant made his pre-trial statements prior to being arrested and receiving his *Miranda* rights. Any silence on appellant's part with respect to acting in self-defense or blacking out was not the product of governmental assurances of his right to remain silent. Compare *Jenkins v. Anderson*, —— U.S. ——, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980); *Anderson*, supra.

We hold that the prosecutor's cross-examination and argument in this case were proper to test the credibility of appellant's testimony. The questions and argument did not violate appellant's right against self-incrimination.

Appellant contends that the trial court erred in excluding expert medical testimony as to appellant's state of mind at the time of the offense. Appellant attempted to elicit from his psychiatrist that because of appellant's unique mental and physical condition, he was incapable of cool reflection at the time of the shooting. The prosecutor's objection was sustained and the testimony was proffered outside the presence of the jury on appellant's bill of exception. The opinion offered by appellant's expert was based on appellant's purportedly unique medical problems—hypertension, coronary artery disease, heart enlargement, and periods of semi-consciousness. Appellant maintains that his testimony would have had substantial weight in proving "adequate cause" under V.T.C.A. Penal Code, Section 19.04(c).

■ Under Section 19.04(c) of the penal code, adequate cause means:

> ... cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

In construing adequate cause, this Court has stated that it is the ordinary person's response to the alleged provocation that is material. *Zimmerman v. State*, 85 Tex. Cr.R. 611, 215 S.W. 101 (1919). In *Zimmerman*, the Court held that the defendant, who was prone to epileptic seizures and nervousness, was to be judged in the light of an ordinary person's response to the provocation. The legislature wisely employed an "ordinary person" standard in defining adequate cause. See Section 19.-04(c), supra. We are not persuaded that appellant's medical incapacities should have a bearing on the evaluation of his response to the provocation. See *McCartney v. State*, 542 S.W.2d 156, 160 (Tex.Cr.App. 1976). No error is shown.

■ Appellant's next contention is that the court failed to apply the law to the facts in its charge to the jury. Appellant's two murder cases were consolidated. The only error we find is that the cause numbers on the charges were transposed. We do not conclude that this error was calculated to injure the rights of appellant or operated to deny him a fair and impartial trial. Article 36.19, V.A.C.C.P.; compare *McGowan v. State*, 169 Tex.Cr.R. 12, 331 S.W.2d 306 (1960); *Byrd v. State*, 373 S.W.2d 745 (Tex.Cr.App.1964).

Appellant contends that the trial court erred in failing to instruct the jury that in determining adequate cause, it should view the evidence from appellant's standpoint. In examining the record, we note that appellant requested the charge that he now questions. The court's charge was substantially identical to the one requested. No reversible error is present. *Stiles*, supra; *Cain*, supra.

■ Appellant also contends that the trial court erred when it failed, over his objection, to give an abstract definition of self-defense in the charge. The trial court properly applied the law of self-defense to the facts of the case. It submitted the defensive issue both in the affirmative and negative.

In *Rivera v. State*, 530 S.W.2d 306 (Tex. Cr.App.1975), we held that it was not reversible error for the court to fail to give an abstract definition of a lesser included offense, where the court applied the law of the lesser offense to the facts of the case. Moreover, this Court has held that the submission of defensive issues in both the affirmative and negative is adequate to protect the defendant's rights. See *Ervin v. State*, 367 S.W.2d 680 (Tex.Cr.App.1963). The court should have submitted an abstract definition on the law of self–defense. However, the omission of the abstract definition under these circumstances was not reversible error.

Next, appellant contends that the court erred in refusing to grant his motions for mistrial on two separate instances. The first occurred when the prosecutor asked if appellant was "running around" on his wife. The second error occurred when the prosecutor attempted to elicit from appellant's expert psychiatric witness that appellant had not acted in self–defense. Appellant's objections to both questions were sustained, the jury was instructed to disregard the questions, and appellant's motions for mistrial were overruled.

█ We have reviewed the record and hold that any prejudicial effect of the questions was cured by the court's instructions to disregard. The questions complained of were not so inherently prejudicial as to suggest the impossibility of withdrawing the impression created in the jurors' minds. *Maddox v. State*, 591 S.W.2d 898 (Tex.Cr. App.1979); *Young v. State*, 547 S.W.2d 23 (Tex.Cr.App.1977); *Cavender v. State*, 547 S.W.2d 601 (Tex.Cr.App.1977).

█ Appellant next contends that the trial court erred in permitting the prosecutor to bolster a state's witness by arguing that an excluded exhibit supported the testimony of the witness. The prosecutor's argument was improper. However, in order for improper jury argument to constitute reversible error, it must be extreme or manifestly improper, or it must inject new and harmful facts before the jury. *Duffy v. State*, 567 S.W.2d 197 (Tex.Cr.App.1978); *Kerns v. State*, 550 S.W.2d 91 (Tex.Cr.App.

1977). We do not conclude that the improper bolstering in this case meets the test. The error does not warrant a reversal of this conviction. *Duffy*, supra; *Brown v. State*, 535 S.W.2d 640 (Tex.Cr.App.1976).

Finally, appellant contends that the trial court erred in failing to grant his amended motion for new trial based upon newly discovered evidence. After the trial, appellant discovered that the investigating police officers had found Hammett's personal diary in his locker at the police station. Appellant was led to believe that the diary contained information that corroborated his theory of self–defense. The court examined the diary *in camera*. Appellant was not permitted to inspect the contents of the diary. The court found that the diary did not contain the alleged newly discovered evidence, and overruled appellant's motion for new trial.

█ A motion for new trial based on newly discovered evidence is addressed to the sound discretion of the trial court, and its ruling should not be disturbed in the absence of a showing of a clear abuse of discretion. *Eddlemon v. State*, 591 S.W.2d 847 (Tex.Cr.App.1980). The factors involved in determining whether to grant a new trial on newly discovered evidence under Article 40.03(6), V.A.C.C.P. are well established. To show an abuse of discretion, the record must establish that:

(1) the newly discovered evidence was unknown or unavailable to the movant at the time of his trial;

(2) the movant's failure to discover or obtain the evidence was not due to a lack of diligence;

(3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and,

(5) the new evidence is probably true and will probably bring about a different result on another trial.

*Eddelmon*, supra; *Whitmore v. State*, 570 S.W.2d 889 (Tex.Cr.App.1978, Opinion on Appellant's Motion for Rehearing); *Collins v. State*, 548 S.W.2d 368 (Tex.Cr.App.1976).

The trial court ordered that the diary be sealed and included in the appellate record. We have examined the diary, and note that the majority of its contents are irrelevant to the issues raised at trial. The statements that are relevant are either inadmissible or cumulative of the testimony at trial. The diary probably would not bring about a different result upon retrial. *Gutierrez v. State*, 502 S.W.2d 746 (Tex.Cr. App.1973). The trial court did not abuse its discretion in refusing to grant appellant's motion for new trial. *Collins*, supra.

The state's motion for rehearing is granted. The judgments are affirmed.

ONION, P. J., and ODOM, J., concur in result.